BRIAN J. WHITE Bar No. 155198
Attorney at Law
4320 Iowa Street
San Diego, CA 92104
Telephone: (619) 280-8022
Facsimile: (619) 280-8023

Attorney for Defendant,
ARTURO HERNANDEZ-ESGUERRA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HON. JOHN A. HOUSTON )

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ARTURO HERNANDEZ-ESGUERRA,<br><br>Defendant. | Case No. 07-CR 2976<br><br>SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE<br><br>Date: April 28, 2008<br>Time: 11:00 a.m. |

## I.

## THIS COURT SHOULD PRECLUDE THE GOVERNMENT FROM PRESENTING HEARSAY STATEMENTS ABOUT SMUGGLING ARRANGEMENTS UNDER CRAWFORD

The Confrontation Clause forbids the use of hearsay against a criminal defendant at trial if the defendant is not afforded the right to confrontation. See Crawford v. Washington, 124 S. Ct. 1354 (2004). Under Federal Rule of Evidence 802, hearsay statements are inadmissible unless one or more hearsay exceptions apply. When a statement involves multiple levels of hearsay, each level must be independently admissible for the statement to come into evidence. Fed. R. Evid. 805.

Here, the material witness told agents that his parents made all of the arrangements for him to be smuggled in to the United States. The material witness did not personally make any arrangements, and he told agents that he did not make any payments before leaving China. Thus anything that the material witness may know about financial arrangements comes, not from his own knowledge, but from two levels of hearsay: first, what his parents said to him; and second, what the "smugglers" allegedly told his parents. The material witness' relatives who made the arrangements are not expected to testify at trial. Thus, Mr. Hernandez-Esguerra will be deprived of his opportunity to confront this person about the alleged financial arrangements. Accordingly, admission of statements through the material witness will violate Mr, Hernandez-Esguerra's Sixth Amendment confrontation rights, and the admission of these statements would further violate the hearsay rules. This Court should exclude these statements at trial.

Mr. Hernandez-Esguerra specifically objects to the following statements from the Material Witness Deposition which was taken on December 7, 2007. The objectionable statements are noted here by the page and line number, and attached as "Exhibit A":

Page 101, Lines 2-4 and 11-25

Page 102, Lines 1-25

Page 103, Lines 1-21

Page 104, Lines 4-25

Page 105, Lines 1-10

Page 106, Lines 22-24

Page 120, Lines 21-25

Page 121, Lines 1-5 and 21-25

///

///

///

///

///

///

## II.

## MR. HERNANDEZ-ESGUERRA's ALLEGED PRIOR BAD ACTS MAY NOT BE USED AGAINST HIM

### A. The Government Has Not Complied with the Notice Requirements of Fed. R. Evid. 404(b).

Fed. R. Evid. 404(b) requires that the Government give notice of the "general nature" of any prior act evidence that it may seek to introduce. As of this writing, the Government has said only that it will seek to admit whatever prior convictions it can. Because the Government has provided no notice of the "general nature" of such evidence -- let alone discovery -- any such evidence should be excluded for failure to comply with Rule 404(b).

### B. 404(b) Evidence Must be Excluded.

In this country it is a settled and fundamental principle that persons charged with crimes must be tried for what they allegedly did, not for who they are. See United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985). The Ninth Circuit Court of Appeals has observed:

> Under our system, an individual may be convicted only for the offense of which he is charged and not for other unrelated criminal acts which he may have committed. Therefore, the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that defendant engaged in other acts of wrongdoing.

Id.

No matter how vile or despicable a person may appear to be, he or she is entitled to a fair trial. Id. Constitutional provisions clearly provide that individuals may only be convicted for the crimes with which they are charged; they may not be subject to criminal conviction merely because they have a detestable or abhorrent background. Id. "Our entire system of justice would deteriorate if we did not jealously protect these constitutional safeguards for **all** citizens." South Dakota v. Moeller, 548 N.W. 2d 465, 468 (S.D. 1996) (referring to prior acts evidence).

Mr. Hernandez-Esguerra moves to exclude evidence of his prior conviction for loitering where children are present from January 1986, as well as his prior arrests that did not result in any convictions under two grounds. First, Mr. Hernandez-Esguerra's prior conviction does not fit within the definition of 404(b) under existing Ninth Circuit law. See United States v. Bibo-

Rodriguez, 922 F.2d 1398, 1400 (9th Cir.); cert. denied, 501 U.S. 1234 (1991) (Evidence of prior criminal conduct may be admitted to prove knowledge if only if all four prongs of four part test are met by the government). Second, if this court determines that Mr. Hernandez-Esguerra's prior conviction is admissible pursuant to 404(b), Mr. Hernandez-Esguerra maintains that the "probative value" of the prior conviction "is substantially outweighed by the danger of unfair prejudice" and the admission of such evidence would be a violation of both Mr. Hernandez-Esguerra's Fifth Amendment Due Process right, and his Sixth Amendment right to a fair trial.

**C. Exclusion of Prior Loitering Where Children are Present Conviction as Irrelevant And Not Similar.**

It is likely the government will seek to introduce evidence of Mr. Hernandez-Esguerra's prior loitering conviction under the guise of Rule 404(b). The government's use of this evidence will be simply a veiled attempt to introduce propensity evidence.

Fed. R. Evid. 404(b) states in relevant part -

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial.

Fed. R. Evid. 404(b). Rule 404(b) strictly forbids use of evidence of prior crimes or bad acts merely to prove bad character. United States v. Garcia-Orozco, 997 F.2d 1302, 1303-04 (9th Cir. 1993). The use of evidence pursuant to this rule "must be narrowly circumscribed and limited" and "may not be introduced unless the government establishes its relevance to an actual issue in the case." Id. at 1304 (citing United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985)). The purpose of Rule 404(b) is to "avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." United States v. Hill, 953 F.2d 452, 457 (9th Cir. 1991).

The government has not given a justification or established the relevance of the prior conviction for its admission in this case. Until and unless the government establishes that the prior

offense is being used for a purpose other than to show Mr. Hernandez-Esguerra has a bad character, it must be excluded and the government should be precluded from introducing the evidence.

**D. Exclusion of Mr. Hernandez-Esguerra's Prior Loitering Conviction Under 403.**

Even when all of the other requirements of "extrinsic acts" evidence are met, the evidence may be accepted only if, on balance, its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant. Fed. R. Evid. 403. Rule 403 provides

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

As to a criminal defendant, Rule 403's term "unfair prejudice" speaks to the capacity of some conceitedly relevant evidence to lure the fact finder into declaring guilt on an improper basis rather than on proof specific to the offense charged. Old Chief, 519 U.S. at 173 (9th Cir. 1997). Such improper grounds certainly include generalizing from a past bad act that a defendant is by propensity the probable perpetrator of the current crime. Id. In this case, evidence of Mr. Hernandez-Esguerra's prior conviction may lead the jury to a conviction based upon an improper basis, propensity. This result is exactly what Rule 403 forbids and evidence of Mr. Hernandez-Esguerra's prior conviction should be excluded.

Mr. Hernandez-Esguerra's guilt or innocence in this case depends on whether the jury believes his presentation of the facts. As such, the prejudicial impact of the prior incident would be extremely grave. The jury could hear evidence of Mr. Hernandez-Esguerra's prior conviction and convict him due to their distaste for the prior offense instead of the facts put forth in this case. There is no similarity between the two offenses. Mr. Hernandez-Esguerra's prior offense related to loitering in an area where children are present and his current offense of alien smuggling are entirely unrelated and not similar in any way to one another. There is nothing probative from the prior offense, but the prejudicial impact it could have against Mr. Hernandez-Esguerra is great.

Moreover, litigating the 1989 conviction during the trial will involve an undue consumption of time. Concerns relating to judicial economy should be part of the decision on

whether or not to allow the introduction of other crimes evidence. Finally, allowing the evidence of the prior offense will be likely to confuse, distract, and mislead the jury from its main inquiry: what happened on September 24, 2007. Under 403, this court has discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of confusing the issues.

For all these reasons, the prior offense from 1986 should not be admitted into evidence.

## III.

## MR. HERNANDEZ-ESGUERRA's ALLEGED PRIOR CONVICTIONS SHOULD NOT BE USED TO IMPEACH UNDER RULE 609.

According to the rap sheet produced by the Government, Mr. Hernandez-Esguerra suffered at least one misdemeanor conviction and either arrests that did not lead to prosecution. It is anticipated that if Mr. Hernandez-Esguerra testifies, the Government will attempt to introduce prior convictions as impeachment material under Rule 609(a)(1) of the Federal Rules of Evidence. However, even under Rule 609(a)(1), such evidence is inadmissible.

Rule 609 provides:

> (a) General rule. For the purpose of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs the prejudicial effect to the accused.

Fed. R. Evid. 609(a)(1) (emphasis added). The plain language of Rule 609(a)(1) and the 1990 Advisory Committee Note clearly indicate that the standard governing the admissibility of a criminal defendant's prior felony conviction is more stringent than the standard governing the admissibility of prior felony convictions of other witnesses. See 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence § 609[04], at 609-42 (1996) ("The amended Rule 609(a)(1) was intended to resolve the problems of fairness by treating criminal defendants differently from other witnesses. The Advisory Committee was aware of the 'unique risk of prejudice' faced by criminal defendants who want to testify on their own behalf: that prior conviction evidence will be 'misused by a jury as propensity evidence.'") (quoting 1990 Advisory Committee Note). Specifically, in

cases where the witness is not a criminal defendant, it is presumed that the prior conviction is admissible and therefore the party seeking exclusion has the burden of showing that the probative value of the prior conviction "is substantially outweighed by the danger of unfair prejudice" under Rule 403. Such a standard, however, does not apply to the prior convictions of testifying criminal defendants. Rather, there is a presumption against the admission of a criminal defendant's prior conviction and "[t]he Government bears the burden of showing . . . that the proffered evidence's probative value substantially outweighs its prejudicial effect." United States v. Alexander, 48 F.3d 1477, 1488 (9th Cir.) (emphasis added), cert. denied 516 U.S. 878 (1995).

Whether the Government has successfully rebutted the presumption against admissibility depends on the balancing of five factors outlined by the Ninth Circuit in United States v. Cook, 608 F.2d 1175 (9th Cir. 1979) (en banc), overruled on other grounds in Luce v. United States, 469 U.S. 38 (1984). These factors are: (1) the impeachment value of the prior conviction; (2) the temporal relationship between the conviction and the subsequent history of the defendant; (3) the similarity between the prior offense and the offense charged; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. Cook, 608 F.2d at 1185 n.8 (citing Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied 390 U.S. 1029 (1968)). After evaluating these five factors, it is clear that the Government cannot show that the probative value of Mr. Hernandez-Esguerra's prior convictions substantially outweighs its prejudicial effect so as to rebut the presumption against admissibility.

With respect to the first factor (the impeachment value of the prior conviction), Chief Justice Berger explained: "A 'rule of thumb' thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not . . . ." Gordon, 383 F.2d at 940.[1] Because Mr. Hernandez-Esguerra's prior crime of loitering is not a crime related to honesty, it would appear that its impeachment value is minimal. None of his prior convictions involve fraud.

The second factor (the remoteness of the prior conviction and the subsequent history of the

[1] The Cook five-factor analysis, and Rule 609(a)(1) jurisprudence in general, is derived from Chief Justice Berger's opinion in Gordon.

defendant) also weighs in favor of exclusion. The prior offense occurred 21 years ago. The third factor (the similarity between the prior conviction and the instant offense) weighs against admission as to the loitering conviction, because they are unrelated and not similar in nature.

The fourth factor (the importance of the defendant's testimony) strongly weighs in favor of exclusion. The loitering offense is over twenty years old, and the notice required under Fed. R. Evid. 609(b) has not been given. Chief Justice Berger explained the fourth factor as follows:

> One important consideration is what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. Even though a judge might find that the prior convictions and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment.

Gordon, 383 F.2d at 940-41. In other words, when the defendant's testimony is critical, he should not be forced to decline testifying because he fears that prior convictions will be admitted. Thus, the question becomes whether Mr. Hernandez-Esguerra's testimony is critical in this case. Clearly, it is. "The need for defendant's version of the events, 'unembarrassed by mention of his previous difficulties with the law,' is particularly great 'where inferences founded upon unexplained acts are likely to be heavily operative.'" 3 Weinstein &. Berger, § 609[03], at 609-40.

Finally, with respect to the fifth factor (the centrality of the credibility issue), it is conceded that if Mr. Hernandez-Esguerra testifies, his credibility will be a central issue. After all, whenever a defendant testifies, his credibility is at issue. However, the fifth factor is generally concerned with cases where "there is a clear-cut conflict between the testimony of prosecution and defense witnesses so that someone has to be lying." Id. Put simply, the fifth factor is concerned with those cases where the issue will be "narrowed to the credibility of two persons -- the accused and his accuser." Gordon, 383 F.2d at 941. In the event Mr. Hernandez-Esguerra testifies in this case, the government will have the ability to cross examine him as to his statement of the facts. The jury is empowered to consider the testimony and decide for themselves if Mr. Hernandez-Esguerra is to be believed.

In sum, when considering the balance of the five factors, it becomes clear that the Government cannot meet its burden of showing that the probative value of Mr. Hernandez-

Esguerra's prior conviction substantially outweighs its prejudicial effect. It should also be noted that Mr. Hernandez-Esguerra does not intend to offer any character evidence, and does not intend "to misrepresent his character or to testify falsely as to his prior criminal record." United States v. Bagley, 772 F.2d 482, 488 (9th Cir. 1985) (holding that district court abused its discretion in admitting prior conviction). As a result, his prior convictions should be excluded.

**CONCLUSION**

For the foregoing reasons, Ms. Hernandez-Esguerra respectfully requests that the Court grant his motions.

Respectfully submitted,

Dated: April 21, 2008

/s/ Brian J. White
BRIAN J. WHITE Attorney for
Defendant ARTURO HERNANDEZ-ESGUERRA

# EXHIBIT A

A. I'M NOT SURE.

Q. DO YOU KNOW HOW MUCH -- WHEN YOUR PARENTS MADE THE ARRANGEMENTS FOR YOU TO BE SMUGGLED INTO THE UNITED STATES, DID THEY PAY ANY MONEY AT THAT TIME?

MR. WHITE: IT'S MY OBJECTION. I OBJECT ON THE GROUNDS OF BASICALLY FOUNDATION, GROUNDS WHETHER HE KNOWS THEY PAID OR NOT.

MR. CLARK: YOU CAN GO AHEAD ANSWER THE QUESTION.

THE WITNESS: I DON'T KNOW.

BY MR. CLARK:

Q. OKAY. I BELIEVE THAT YOU STATED PREVIOUSLY THAT YOU KNEW THAT YOUR PARENTS HAD MADE ARRANGEMENTS FOR YOU TO BE SMUGGLED INTO THE UNITED STATES; IS THAT CORRECT?

A. CAN YOU REPEAT, PLEASE?

Q. YES.

DID YOU PREVIOUSLY STATE HERE THAT YOUR PARENTS HAD MADE ARRANGEMENTS FOR YOU TO BE SMUGGLED INTO THE UNITED STATES?

A. YES.

Q. IN CONNECTION WITH THAT, I BELIEVE YOU PREVIOUSLY STATED THAT THEY WERE PAYING SOMEONE TO BRING YOU INTO THE UNITED STATES?

A. YES.

Q. AND DO YOU KNOW HOW MUCH THEY WERE PAYING?

A. I DON'T KNOW.

Q. WHEN I ASKED THAT, DO YOU HAVE ANY -- DO YOU KNOW IF THEY PAID ANY PORTION OF THE PRICE BEFORE WHEN THEY MADE THE ARRANGEMENTS?

A. I DON'T KNOW.

Q. HOW YOU DO KNOW THAT THEY WERE GOING TO BE PAYING MONEY TO SOMEONE TO HAVE YOU SMUGGLED INTO THE UNITED STATES?

A. I'M NOT CLEAR ABOUT THAT.

Q. OKAY. YOU MENTIONED PREVIOUSLY THAT YOUR PARENTS WERE PAYING SOMEONE TO HELP BRING YOU INTO THE UNITED STATES.

MY QUESTION IS: HOW DO YOU KNOW OR ON WHAT BASIS DO YOU KNOW AND ARE YOU TELLING US THAT YOUR PARENTS WERE PAYING SOMEONE?

A. THEY TOLD ME SO.

MR. WHITE: MY OBJECTION WOULD BE HEARSAY THEN TO THAT ANSWER AND QUESTION.

BY MR. CLARK:

Q. DID THEY TELL YOU HOW MUCH THEY WERE PAYING?

MR. WHITE: I OBJECT: HEARSAY.

THE WITNESS: NO.

BY MR. CLARK:

Q. DID THEY TELL YOU WHETHER THEY WOULD BE PAYING MONEY UP FRONT OR WHETHER THEY WOULD BE PAYING -- FIRST, DID THEY TELL YOU WHETHER THEY WERE PAYING MONEY UP FRONT?

MR. WHITE: OBJECTION. HEARSAY.

THE WITNESS: NO.

BY MR. CLARK:

Q. DID THEY TELL YOU WHAT THE PAYMENT ARRANGEMENTS WERE --

MR. WHITE: OBJECTION. HEARSAY.

BY MR. CLARK:

Q. -- IN TERMS OF WHEN YOU WOULD BEING PAYING OR THEY WOULD BE PAYING?

THE WITNESS: THAT ATTORNEY OBJECTED.

DO I NEED TO ANSWER THE QUESTION?

MR. CLARK: YES. THE ATTORNEY IS GOING TO BE MAKING OBJECTIONS TO CERTAIN QUESTIONS. ONCE THE ATTORNEY HAS STATED THE OBJECTION, HE'S PRESERVED THE OBJECTION FOR LATER ON.

BUT AS FOR RIGHT NOW, JUST ANSWER THE QUESTION AFTER HE LODGES THE OBJECTION.

THE WITNESS: NOW I SEE.

WOULD YOU PLEASE ASK AGAIN?

BY MR. CLARK:

Q. DID YOUR PARENTS TELL YOU WHEN THEY WOULD BE MAKING PAYMENT ON YOUR BEING SMUGGLED INTO THE UNITED STATES?

MR. WHITE: OBJECTION. HEARSAY.

THE WITNESS: AFTER I ARRIVE HERE.

(OFF THE RECORD DISCUSSION)

BY MR. CLARK:

Q. DO YOU KNOW WHERE IN THE UNITED STATES THE SMUGGLERS HAD AGREED TO TAKE YOU?

A. I DON'T KNOW.

Q. DO YOU KNOW WHAT YOUR FINAL DESTINATION WAS?

A. I DON'T KNOW.

Q. WHO WAS SUPPOSED TO RECEIVE THE MONEY THAT YOUR PARENTS WERE GOING TO PAY?

MR. WHITE: OBJECTION. SPECULATION AND FOUNDATION.

THE WITNESS: I DON'T KNOW.

BY MR. CLARK:

Q. WHERE WERE YOU WHEN YOUR PARENTS MADE THE ARRANGEMENTS TO SMUGGLE YOU INTO THE UNITED STATES?

MR. WHITE: I OBJECT. FOUNDATION AND SPECULATION.

THE WITNESS: I MYSELF WAS IN FUZHOU CITY, FUJIAN PROVINCE.

BY MR. CLARK:

Q. HOW DID YOU KNOW WHEN YOUR PARENTS HAD MADE THE ARRANGEMENTS TO HAVE YOU SMUGGLED INTO THE UNITED STATES?

A. JUST A FEW DAYS BEFORE I LEFT.

Q. LEFT FROM WHERE?

A. LEFT CHINA.

Q. SO A FEW DAYS BEFORE YOU LEFT CHINA, YOUR PARENTS TOLD YOU THEY HAD MADE ARRANGEMENTS TO HAVE YOU SMUGGLED INTO THE UNITED STATES?

MR. WHITE: OBJECTION. CALLS FOR HEARSAY.

THE WITNESS: YES.

BY MR. CLARK:

Q. WAS ANYTHING ELSE DONE TO INDICATE TO YOU THAT YOUR PARENTS HAD MADE ARRANGEMENTS FOR YOU TO BE SMUGGLED INTO THE UNITED STATES?
A. I'M NOT VERY CLEAR ABOUT THE QUESTION.
Q. APART FROM YOUR PARENTS TELLING YOU THAT THEY WERE GOING TO HAVE YOU SMUGGLED INTO THE UNITED STATES, DID THEY DO ANYTHING ELSE?
DID THEY GIVE YOU SOMETHING OR ANYTHING OTHER THAN TELLING YOU?
A. NO.
Q. HOW YOU DID GET FROM CHINA TO MEXICO?
A. BY AIRPLANE.
Q. WAS IT JUST ONE AIRPLANE THAT FLEW FROM CHINA TO MEXICO?
A. NO.
Q. CAN YOU EXPLAIN THE TRAVEL ROUTE THAT YOU TOOK TO GET TO MEXICO?
A. I STARTED FROM FUZHOU, TOOK AN AIRPLANE TO HONG KONG. IN HONG KONG, I CHANGED TO ANOTHER FLIGHT AND WE FLEW TO FRANCE. AND FROM FRANCE, WE CHANGED ANOTHER AIRPLANE. THAT'S IT.
Q. AND WHERE DID YOU FLY INTO?
A. TO MEXICO.
Q. DO YOU KNOW WHERE IN MEXICO?
A. MEXICO CITY.
Q. WHO BOUGHT THE PLANE TICKETS?

MR. WHITE: OBJECTION. FOUNDATION.

THE WITNESS: I DON'T KNOW WHO BOUGHT.

BY MR. CLARK:

Q. WHO GAVE YOU THE PLANE TICKETS?

A. MY PARENTS.

Q. WHEN DID THEY GIVE YOU THE PLANE TICKETS?

A. ONE DAY BEFORE I LEFT CHINA.

Q. YOU NOTED THAT YOU FLEW INTO MEXICO CITY. WHEN DID YOU FLY INTO MEXICO CITY?

A. IN AUGUST.

Q. WHAT HAPPENED ONCE YOU FLEW INTO MEXICO CITY IN AUGUST?

A. WHAT DID YOU ASK?

Q. IN OTHER WORDS, YOU WERE ARRESTED ON SEPTEMBER 24TH AND YOU NOTED THAT YOU FLEW INTO MEXICO CITY IN AUGUST.

WHAT HAPPENED BETWEEN THE TIME THAT YOU FLEW INTO MEXICO CITY IN AUGUST AND WERE ARRESTED AT THE PORT OF ENTRY ON SEPTEMBER 24TH?

A. I WAS DETAINED IN A HOUSE. IT WAS LIKE A RESIDENTIAL PLACE.

Q. SO DID SOMEONE MEET YOU AT THE AIRPORT IN MEXICO CITY?

A. YES.

Q. DID THEY RECOGNIZE YOU?

MR. WHITE: OBJECTION. CALLS FOR SPECULATION.

THE WITNESS: YES.

BY MR. CLARK:

Q. YES.

DO YOU KNOW IF -- YOU SAID YOU HEARD TWO PEOPLE TALKING, I GUESS AT LEAST TWO PEOPLE TALKING IN THE CAR; CORRECT?

A. YES.

Q. OKAY. AND I'M WONDERING IF YOU HEARD ANY MORE THAN TWO PEOPLE. FOR EXAMPLE, IF YOU HEARD THREE DISTINCT, SEPARATE VOICES?

A. YES.

Q. OKAY. HOW MANY DISTINCT VOICES DID YOU HEAR AT ANY ONE TIME?

A. HOW MANY?

Q. YES.

A. I COULD ONLY HEAR THE CONVERSATION. I COULD NOT TELL YOU HOW MANY.

Q. OKAY. OKAY. AND YOU DON'T KNOW WHAT LANGUAGE THEY WERE SPEAKING?

A. NO.

Q. OKAY. I WANT TO ASK YOU A LITTLE BIT ABOUT THE ARRANGEMENTS TO BRING YOU INTO THE UNITED STATES.

AS FAR AS YOU KNOW, YOUR PARENTS WERE ARRANGING THIS?

A. YES.

Q. OKAY. AND YOU HAVE NO PERSONAL KNOWLEDGE OF THEM PAYING ANY MONEY?

A. RIGHT.

Q. YOU HAVE NO PERSONAL KNOWLEDGE OF WHAT ANY OF THE DETAILS OF ANY OF FINANCIAL ARRANGEMENTS WERE GOING TO BE, IF ANY?

A. RIGHT.

MR. WHITE: OKAY. ALL RIGHT.

I DON'T HAVE ANYTHING FURTHER. THANK YOU.

I DO ACTUALLY. I'M SORRY.

BY MR. WHITE:

Q. WHEN YOU GOT INTO THE VEHICLE, WAS THE VEHICLE IN ANY TYPE OF A STRUCTURE, FOR EXAMPLE, A GARAGE?

A. IT WAS RIGHT IN FRONT OF THE GATE.

Q. JUST OUT IN THE OPEN, IN PLAIN VIEW?

A. YES.

MR. WHITE: OKAY. ALL RIGHT.

THAT'S ALL I HAVE. THANK YOU.

MR. CLARK: I JUST HAVE A FEW QUESTIONS ON REDIRECT.

REDIRECT EXAMINATION

BY MR. CLARK:

Q. DID YOU THINK THAT YOU WERE COMING INTO THE UNITED STATES FOR FREE?

A. IT IS IMPOSSIBLE.

Q. WHY DO YOU SAY THAT?

A. BECAUSE MY PARENTS TOLD ME THEY HAD TO PAY.